NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241356-U

NOS. 4-24-1356, 4-24-1357 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DeSHAWN POWELL, | ) | Nos. 24CF509 |
| Defendant-Appellant. | ) | 24CF639 |
| | ) | |
| | ) | Honorable |
| | ) | John M. Madonia, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The trial court erred by detaining defendant in one case without receiving evidence of dangerousness beyond the charging instrument, but the court properly ordered defendant detained in a second case.

¶ 2  Defendant DeShawn Powell appeals from the trial court's orders denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652 (eff. Jan. 1, 2023) and commonly known as the Pretrial Fairness Act. We affirm in part and reverse in part.

¶ 3  I. BACKGROUND

¶ 4  A. Case No. 24-CF-509

¶ 5  1. *The Charges*

¶ 6  In Sangamon County case No. 24-CF-509, the State charged defendant with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)), possession of a

stolen firearm (*id.* § 24-3.8(a)), and unlawful sale or delivery of a firearm (*id.* § 24-3(A)(g)). The State filed a verified petition to deny defendant pretrial release pursuant to section 110-6.1(a) of the Code (725 ILCS 5/110-6.1(a) (West 2022)).

¶ 7                                    2. *The Detention Hearing*

¶ 8             On April 26, 2024, the trial court conducted a detention hearing, at which the State made a proffer of defendant's criminal history, as well as a proffer of the circumstances surrounding the charges against defendant. The proffer of defendant's criminal history was the following:

> "2015-CM-742 (m/B) Trespass to Property
>
> 1997-CM-2721 (m/B) Trespass to Property
>
> 1997-CM-2530 (m/A) Domestic Battery
>
> 1997-DT-31 (m/A) Driving Under the Influence (Logan
>
> County)
>
> 1989-CF-259070011 (f/X) Armed Robbery—8 years DOC
>
> (Cook County)."

¶ 9             The State's verified petition also contained a report from the Sangamon County Sheriff's Office regarding the charges against defendant, which stated the following:

> "On 4/24/24 officers located a stolen vehicle belonging to
>
> Skiellar Shockley. The vehicle was located behind 11 Manor Ct.,
>
> which is within eyesight of [defendant's] address at 809 S. 25th St.
>
> Shockley also reported having a firearm in the vehicle that was also
>
> taken (Taurus G3C 9mm).
>
> On 4/25/24 Detective Lehr went to meet with Shockley. A

photo was obtained of the gun. The owner also showed Detective Lehr what type of ammunition was loaded in it. Sgt. Spaid was able to obtain the serial number to the gun (Ser. # ACL470891).

Shortly after receiving the information on the firearm, members of the Street Crimes [Unit] conducted a traffic stop on a vehicle and recovered a firearm. The firearm looked like [the] one in the photo Detective Lehr had obtained. The ammunition in the firearm was also the same, and the serial number matched.

The subject who was in possession of the firearm stated he had just purchased it that day from a subject named Deshawn at 7 Brothers for $175.00. The subject described [defendant] and positively identified [defendant] in a photo lineup. The subject also provided a phone number for [defendant].

Video was obtained from 7 Brothers, which showed [defendant] arrive at the store and g[et] into the vehicle that the gun was located in. [Defendant] was only in the vehicle for a ve[ry] short time before exiting. [Defendant] is then observed going into the business, purchasing a pack of Newport cigarettes. [Defendant] then leaves the area in the vehicle he arrived in.

Members of the Street Crimes Unit located [defendant], and he was wearing the same clothing as in the video from 7 Brothers. In his possession was a pack of Newport cigarettes and a cell phone. I called the number provided by the other subject, and the phone in

[defendant's] possession rang.

[Defendant] was interviewed and stated that he had gone to 7 Brothers to meet up with a friend. [Defendant] first stated that he never got into the friend's vehicle, but then said he was not sure. [Defendant] said the friend gave him $200.00 to help pay his light bill, but [he] did not give the friend anything.

[Defendant] is a convicted felon from Cook County for armed robbery/discharge firearm (89CF000259070011), for which he was sentenced to 8 years imprisonment.

A LEADS check showed [defendant] did not possess a valid FOID or concealed carry license."

¶ 10 The State argued that because defendant's possession and sale of a firearm as a felon was "inherently dangerous to the community," conditions like electronic monitoring or home confinement would not be appropriate in this case. Defense counsel argued in response that (1) the evidence was not clear and convincing that he had committed a felony and (2) he had strong connections to the community. Counsel argued that an alternative to detention, such as a possible curfew, home confinement, or electronic monitoring, would be sufficient.

¶ 11 The trial court ordered defendant detained, noting that "[t]he inherent dangerousness standard is met by the fact that felons can't have guns" and the court did not believe that home confinement or electronic monitoring could mitigate this type of dangerousness. Defendant did not immediately take steps to appeal the detention ruling. He was, however, under no immediate time limit governing his right to do so, because a defendant may appeal a detention decision by filing the appropriate notice "at any time prior to conviction." Ill. S. Ct. R. 604(h)(3)

(eff. Apr. 15, 2024).

¶ 12    Defendant had two subsequent court appearances in the month after the detention ruling. Though we lack transcripts, the docket reflects that on May 16, 2024, the trial court apparently found a continuing necessity for detention because "circumstances ha[d] not changed" since the April 26 detention order. On May 23, the court again found that "[c]onditions of pretrial detention are to remain."

¶ 13                    B. Case No. 24-CF-639

¶ 14                    1. *The Charges*

¶ 15    On May 22, 2024, in Sangamon County case No. 24-CF-639, the State brought a new charge against defendant for unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 2022)), arising out of events occurring on January 1, 2024. The State filed a new verified petition to deny defendant pretrial release pursuant to section 110-6.1(a) of the Code (725 ILCS 5/110-6.1(a) (West 2022)).

¶ 16                    2. *The Detention Hearing*

¶ 17    Also on May, 22, 2024, the trial court conducted a detention hearing at which the prosecutor made the following proffer and argument:

> "In the early morning hours [of January 1, 2024], [defendant] and a number of other individuals were at an address here in Springfield. Officers witnessed three individuals firing off separate firearms in the front of that residence. The officers then were able to apprehend [defendant] and a number of others within the garage of that residence. They also located three separate and distinct firearms. One gun was a .45 caliber Kimber handgun.

That .45 caliber handgun as well as the other two handguns were sent to the Illinois State Police crime lab for further testing. A buccal swab of the defendant was sought through a search warrant and was able to be received by the defendant or by the Springfield police from the defendant and sent to testing. The DNA is confirmed to be [defendant's] on the firearm. There is—I believe the number was a 6.6 sextillion times more likely that it originated from [defendant] than an unknown individual.

[Defendant], therefore then, is alleged now to have possessed two separate and distinct firearms within a five-month period here in Springfield. [Defendant] is not able to possess that firearm based on a 1989 Class X armed robbery from Cook County. He served eight years in the Illinois Department of Corrections for that. So for over 30 years [defendant] has been banned from possessing firearms and yet we have an incident where he is alleged to have possessed a firearm outside of a residence here in Springfield on New Years Eve.

We don't believe that any combination of conditions would prevent [defendant] from obtaining a separate firearm. We believe that he would, as evidenced by allegations that he has possessed two different firearms within a five-month period, he would be able to find his way to a third firearm if given the opportunity. They are of a nature that allows them to be concealed or transported both to a

home should he be ordered to home confinement or can be found in a home, residence or vehicle, if he is placed on electronic monitoring."

¶ 18 The trial court then inquired if defendant was still detained on the order it had entered the previous month in case No. 24-CF-509, and the prosecutor replied that he was.

¶ 19 In response, defense counsel argued that for many years, defendant had been out in the community employed as an auto mechanic and that, other than the new allegations, defendant had long been a largely law-abiding citizen. Counsel again argued that the State had not shown that any condition or combination of conditions regarding defendant's release would be insufficient to mitigate the threat to public safety.

¶ 20 The trial court concluded that the State had met its burden regarding detaining defendant, noting that his possession of a weapon at a residence with other individuals when the weapon was being fired was indicative of danger to the community that could not be mitigated by any other set of circumstances. The court also noted that although the new offense was alleged to have occurred prior to the complaint in case No. 24-CF-509, the evidence of defendant's "continued criminal behavior increases the level of dangerousness to our community [that he presents]."

¶ 21 Once again, defendant did not immediately take steps to appeal.

¶ 22 C. Proceedings Related to Both Cases

¶ 23 1. *Defendant's Motion to Reconsider*

¶ 24 On September 18, 2024, defendant filed a motion seeking reconsideration of the detention orders in both cases. The motion references only the original April 26, 2024, and May 22, 2024, detention orders, and it cites neither specific authority nor new evidence.

¶ 25    The motion to reconsider was heard before the assigned trial judge on October 1, 2024. The trial court began the hearing by stating its understanding that the proceeding was "a continued detention hearing pursuant to" section 110-6.1(i-5) of the Code. Defendant offered up what he characterized as a "change in circumstances," but it was more in the nature of an argument that the court misunderstood the facts when making the May 22 ruling in case No. 24-CF-639. The court's May 22 order noted that defendant had been on some form of release from custody at the time of the January 1 events at issue in the second case; this is unquestionably incorrect because case No. 24-CF-509 was not commenced until April. In any event, whether as a ruling on defendant's motion or as a review of the continuing need for detention pursuant to section 110-6.1(i-5) of the Code, the court denied defendant's release.

¶ 26    2. *Defendant's Motion for Relief From Judgment*

¶ 27    On October 10, 2024, defendant filed an Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) motion for relief from judgment, a necessary prerequisite for defendant to appeal his detention. Characterizing the purpose and function of a motion for relief, defendant stated that "by its nature" the motion for relief "seeks to have the previous ruling reviewed." The motion for relief then stated the following grounds for relief:

> "6. There was not sufficient evidence of dangerousness at the initial hearing for a finding of dangerousness—no evidence was presented that [defendant] used the gun and [defendant] made no admissions regarding the same.
>
> 7. [Defendant's] criminal history is old from 1989 and 1997.
>
> 8. Even if a finding of dangerousness was appropriate, there were certainly conditions and combinations of conditions that could

be imposed to mitigate that danger. Especially in light of the fact that he did not commit one offense while on pre-trial release for the other offense and neither offense alleges that he was using the weapon to intentionally harm someone."

¶ 28 Defendant's motion for relief was heard the day after it was filed. At the October 11, 2024, hearing, defendant's counsel repeated his view that the nature of a motion for relief is akin to a motion to reconsider because both are directed against rulings made at prior hearings. The trial court, however, redirected the discussion to our unreported decision in *People v. Cervantes*, 2024 IL App (4th) 240624-U, and the question of whether defendant was required to demonstrate a change in circumstances to prevail on his motion for relief, suggesting that it was necessary for defendant to have appealed the original detention orders within 30 days of their entry.

¶ 29 The trial court was in error in two respects. First, as noted above, there is no longer a specific time limit on a defendant seeking to appeal a detention order, so long as the appeal occurs before conviction. Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15. 2024); see Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024) (exempting appeals under Rule 604(h) from the usual 30-day time limit for appeals); *contra* Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023) (since-repealed provision imposing a 14-day time limit on appeals from detention orders). Second, the necessity for a defendant to demonstrate a change in circumstances applies to the statutory detention review under section 110-6.1(i-5), not the entirely different vehicle of a motion for relief under Rule 604(h)(2); the court was wrong to steer the discussion toward the former in lieu of the latter. In the end, citing *Cervantes* and finding that there had been no change in circumstances, the court denied the motion for relief.

¶ 30 Having satisfied the prerequisite of obtaining a ruling on his motion for relief by the trial court, defendant then initiated this appeal using the notice of appeal form required by

Illinois Supreme Court Rule 606(d) (eff. Apr. 15, 2024). Ill. S. Ct. Rs. Art. VI Forms Appendix R. 606(d). Defendant's notice of appeal was filed in both cases on October 16, 2024; we consolidated the appeals on our own motion. We also granted two motions by defendant to supplement the record, as well as a brief extension of time for defendant to file his memorandum. Due to the complex procedural history of this case, we find there is good cause for extending the deadline for this decision from its original deadline of January 24, 2025. See Ill. S. Ct. R. 604(h)(8) (eff. Apr. 15, 2024).

¶ 31                                    II. ANALYSIS

¶ 32        Proper analysis of this appeal requires a clear understanding of which detention decisions are at issue. Because defendant did not appeal until October 16, 2024, months after the initial order for his detention, the trial court readdressed the necessity for his detention through multiple rulings. The State's memorandum focuses on the subsequent detention ruling, arguing that no change in circumstances was shown that would justify a departure from the initial detention rulings. Defendant, however, clearly seeks to put the initial detention rulings at issue, not the ones which followed.

¶ 33        A. Defendant Purports to Appeal From the Original Detention Decision

¶ 34        On April 26, 2024, defendant was ordered detained in case No. 24-CF-509. Defendant did not immediately appeal, and as noted above, he was under no immediate time limitation governing his right to do so. Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024). On May 22, 2024, defendant was also ordered detained in case No. 24-CF-639, and once again, he did not immediately appeal. The docket reflects several additional court appearances since these two rulings, sometimes accompanied by docket entries with an explicit finding of the need for continued detention, but sometimes not, although we presume the trial court made the necessary

- 10 -

findings. See 725 ILCS 5/110-6.1(i-5) (West 2022) (requiring the trial court to "find that continued detention is necessary" "[a]t each subsequent appearance of the defendant before the court").

¶ 35 On September 18, 2024, defendant filed a motion seeking reconsideration of the detention orders in both cases. The motion referenced only the original April 26, 2024, and May 22, 2024, detention orders, and it cited neither specific authority nor new evidence. At the October 1, 2024, hearing on the motion to reconsider, things got somewhat off track when the trial court treated the hearing as "a continued detention hearing pursuant to" section 110-6.1(i-5), rather than a motion to reconsider, but the court was not completely in error. Even though the matter had come before the court on a motion to reconsider, the hearing on the motion was still a "subsequent appearance of the defendant before the court." *Id.* While the better course might have been to address the motion to reconsider separately from the detention review prescribed by statute, the latter was still required, even if not requested.

¶ 36 On October 10, 2024, defendant filed his motion for relief, a necessary prerequisite if he wished to appeal. The motion recited that "by its nature," a motion for relief "seeks to have the previous ruling reviewed." The motion stated essentially the same grounds argued at the original detention hearings: insufficient evidence of dangerousness, a dated criminal history, and the adequacy of conditions of release. At the hearing on the motion, the trial court again seemed to confuse a Rule 604(h)(2) motion for relief with the statutory review of the necessity for detention under section 110-6.1(i-5). It also mistakenly believed that defendant's failure to appeal the original detention orders within 30 days had some bearing on the matter. In the end, the court denied the motion for relief and that is the critical fact: defendant satisfied his obligation under Rule 604(h)(2) to present a motion for relief setting forth the issues he wished to raise on appeal. Those issues, as well as "errors occurring for the first time at the hearing on the motion for relief,"

are properly before this court on appeal. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 37     Defendant then initiated his appeal by using the notice of appeal form required by Rule 606(d). As recently noted in *People v. Burries*, 2025 IL App (5th) 241033, ¶¶ 17-18, the prescribed form requires that the appellant list the date of the ruling on the motion for relief, but it does not require listing of the specific orders being appealed. However, consistent with his position below, defendant's appellate memorandum makes clear that he is seeking review of the "initial detention orders" in each case, not the trial court's section 110-6.1(i-5) interim review of the initial orders. Consequently, defendant has made clear both at the trial court and on appeal that he wishes to put the original detention rulings of April 26 and May 22 at issue. We now examine the particulars of those specific decisions.

¶ 38                    B. The Detention Rulings in This Case

¶ 39     Until recently, this court reviewed the trial court's detention decisions for an abuse of discretion. See *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 35, *aff'd on other grounds*, 2025 IL 130626. Now, however, our standard of review is as follows:

> "(1) when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *People v. Morgan*, 2025 IL 130626, ¶ 54.

Here, the State did not present live witness testimony, so our standard of review is *de novo*. *Id.*

¶ 40       When the trial court initially addressed defendant's detention in case No. 24-CF-509, he was charged with three offenses: unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)); possession of a stolen firearm (*id.* § 24-3.8(a)); and unlawful sale or delivery of a firearm (*id.* § 24-3(A)(g)). The first two charges are Class 2 felonies; the third is a Class 4 felony. The State sought to detain defendant on all three charges on the basis that he posed a danger to individuals or the community. Other information available to the court included defendant's misdemeanor convictions between 1997 and 2015, as well as his 1989 Class X conviction of armed robbery, for which he served seven years in prison and which gave rise to his felony disqualification from possessing firearms.

¶ 41       The entirety of the trial court's analysis on the danger posed by defendant was the following: "The inherent dangerousness standard is met by the fact that felons can't have guns, so he's alleged to have possessed the gun, and is alleged to have sold the gun."

¶ 42       The trial court's analysis here is lacking. Under the Code, a defendant charged with any of these three gun-related offenses is presumed to be entitled to pretrial release. 725 ILCS 5/110-2(a) (West 2022). Finding a defendant to be particularly dangerous because the charging instrument alleges that he was a felon with a gun would flip this statutory presumption on its head. As this court has explained, the base allegations in the charging instrument are an inadequate basis on which to find dangerousness. *People v. Romine*, 2024 IL App (4th) 240321, ¶ 18; see *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 ("If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release.").

¶ 43       Defendant's criminal history is also problematic as a basis for detention, not just because of its age, but because the existence of at least one prior felony is a definitional element

of the charge of unlawful possession of a weapon by a felon. See 720 ILCS 5/24-1.1(a) (West 2022); see also *id.* § 24-1.7 (establishing greater penalties for unlawful possession of a firearm by a repeat felony offender). Again, *every* defendant charged with unlawful possession of a weapon by a felon will have a prior felony, and while we might intuitively conclude that a person charged with such an offense poses a risk to public safety, the legislature has decreed that persons charged with that offense are presumptively subject to release. See 725 ILCS 5/110-2(a), 110-6.1(a)(6)(O) (West 2022). Whether this is wise or unwise is not for us to decide; we must follow the law given to us by the legislature. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 16. In this instance, a detention decision that is based entirely on the charging instrument, rather than an individualized assessment of the case, could not stand, even under abuse of discretion review. See *Romine*, 2024 IL App (4th) 240321, ¶ 19 (holding that a court must look beyond the bare allegations of the charging instrument to the specific articulable facts of the case). Because the State failed to proffer evidence of dangerousness beyond the charging instrument, the decision necessarily fails under *de novo* review as well.

¶ 44    We recognize that, on several occasions after April 26, 2024, the trial court reaffirmed the original detention decision made in case No. 24-CF-509. We note that the State has not argued that these decisions presented new information or a stronger basis for detention than was present in the original hearing. In fact, the State affirmatively asserts that nothing had changed since the original detention ruling. Here, where we have found that original detention ruling to be unsupportable, reversal of the detention order in case No. 24-CF-509 is required.

¶ 45    There is, however, a second case at issue here. The trial court independently ordered defendant detained in case No. 24-CF-639, a case in which he was again charged with the unlawful possession of a weapon by a felon, a Class 2 felony (720 ILCS 5/24-1.1(a), (e) (West 2022)). When

the State asked to detain defendant on this charge, the court was made aware of a *second* instance of defendant being in possession of a *different* firearm. Although the charges in the second case relate to events that preceded those at issue in the first case, that is of no consequence; it is the repetition of the charged behavior, not the order of events, that tends to show dangerousness. See 725 ILCS 5/110-6.1(g)(1)-(2), (7) (West 2022) (allowing the trial court to consider "any offense charged," as well as the "history and characteristics of the defendant" and "[w]hether the defendant is known to possess or have access to any weapon or weapons").

¶ 46 Having reviewed the evidence *de novo*, we conclude that the trial court did not err in ordering defendant's detention in case No. 24-CF-639. After having been long disqualified from the possession of firearms, it is alarming that defendant would be in possession of two separate weapons a few months apart. This conclusion relies on more than just the existence of the charge and demonstrates that defendant has repeatedly failed to abide by the important restrictions placed on his possession of firearms stemming from his felony conviction. With respect to the court's conclusion that the danger "could not be mitigated by any other set of circumstances," the fact that defendant is alleged to have twice violated the legal restrictions on his possession of firearms in such a short time with two different weapons would rightly make the trial court hesitant to believe he would abide by conditions of release, including the mandatory conditions that defendant not again violate the felon in possession statute and surrender all firearms in his possession. *Id.* § 110-10(a)(4)-(5). We agree with the trial court's conclusion.

¶ 47 III. CONCLUSION

¶ 48 For the reasons stated, we affirm the trial court's order of detention in case No. 24-CF-639 and reverse its order in case No. 24-CF-509.

¶ 49 No. 4-24-1356, Reversed.

¶ 50        No. 4-24-1357, Affirmed.