2026 IL App (4th) 251329
NO. 4-25-1329

FILED
March 18, 2026
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| REGINALD FULLER JR., | ) | No. 25CF945 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jack D. Davis II, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices DeArmond and Vancil concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendant Reginald Fuller Jr. appeals the trial court's order denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). He argues that the State failed to prove (1) he posed a threat to any person or persons or the community and (2) no less-restrictive conditions would mitigate any threat he posed. We affirm.

¶ 2                       I. BACKGROUND

¶ 3      On July 11, 2025, the State charged defendant by complaint with aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2024)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), and possession of a firearm without a valid Firearm Owner's Identification (FOID) Card (430 ILCS 65/2(a)(1) (West 2024)). The trial court issued a warrant for defendant's arrest, and he surrendered himself to police on July 12, 2025.

¶ 4                                    A. Initial Pretrial Detention Hearing

¶ 5        On July 14, 2025, the State filed a detention petition alleging that defendant committed detainable offenses and posed a real and present safety threat to any person or persons or the community. To provide a factual basis for defendant's pretrial detention, the State attached to its petition a summary of the Springfield Police Department's investigation of the incident at issue. The trial court held a hearing on the petition on July 15, 2025, and the State presented the following in its oral proffer and the investigation summary.

¶ 6        On July 10, 2025, three juveniles drove to a house in Springfield, Illinois, known by the police to be a location from which cannabis was sold. They approached the door, but no one answered. As they left, a man described by the juveniles as a "black male" with "dreads" emerged from the house and began shooting at them from the front porch. The juveniles fled in their car, but a bullet struck the driver in the shoulder and head. As a result, the car crashed into a neighboring house. The shooter then fled. A ShotSpotter alert reported to the police that 11 shots had been fired at approximately 4 p.m., and several calls were made to dispatch "about a black male shooting." The police later located several shell casings at the residence and bullets on the driver's seat of the juveniles' vehicle and on the road in front of the residence. Two of the three juveniles identified defendant as the shooter in a photograph lineup. Additionally, a neighbor who was mowing his yard at the time of the shooting informed police he knew defendant and saw him shooting at the car. A search of the residence, which was set up "like a corner store or dispensary," revealed "several pounds of cannabis individually packaged" as products labeled for sale. According to police, the "shooting occurred at a busy intersection during daytime hours with steady traffic, which could have resulted in several passerby vehicles being struck." The State further noted at the time of the shooting, defendant was on pretrial release in Sangamon County

case No. 25-CF-465, in which he was charged with possession of cannabis (defense counsel later indicated the charges related to manufacture and delivery).

¶ 7 The State argued defendant posed a threat to the community, as the shooting occurred in "the middle of the day" from a house known to be a place at which marijuana products were sold. Beyond that, defendant possessed the firearm involved in the shooting without a FOID card. The State also argued that although defendant had no significant criminal history, the shooting occurred while defendant was on pretrial release for another offense.

¶ 8 The State further contended that no conditions could mitigate the threat defendant posed to the community, emphasizing that he committed the shooting while he was already on pretrial release for a different offense. Additionally, conditions such as electronic monitoring and home confinement would not prevent defendant from acquiring firearms he was not legally permitted to possess. Thus, detention was the least restrictive means to ensure the safety of the community.

¶ 9 Defendant countered that his criminal history was nonviolent and included only traffic matters and a pending charge involving cannabis. Further, defendant turned himself in to the police the day after the arrest warrant issued because he was in St. Louis, Missouri, for his daughter's cancer treatments. Moreover, the juveniles involved had a "history of robbing places" and were "potentially" planning to rob the house, though he did not "know the history of these juveniles" and did not "have access to their names, their records, things of that nature." Defendant was employed, lived with his mother, and had several children. One of defendant's children had "significant medical conditions" requiring treatment in St. Louis.

¶ 10 Following the hearing, the trial court granted the State's motion to deny defendant pretrial release. The court concluded the proof was evident and the presumption great that

defendant committed a detainable offense, emphasizing the State's proffer indicated a neighbor who knew defendant observed him shooting at the juveniles' car. The court also concluded that defendant posed a threat to the community, as he discharged his firearm while in a neighborhood and while present in a house alleged to be involved in drug sales. Finally, in light of these circumstances and the fact that defendant was on pretrial release for "a significant cannabis charge" at the time of the shooting, no conditions could mitigate the threat he posed.

¶ 11                    B. Subsequent Continued Detention Orders

¶ 12        On August 15, 2025, defendant appeared for a preliminary hearing. At the hearing, defendant argued his detention was no longer necessary because a change in circumstances justified his release. Specifically, defendant asserted he "turn[ed] himself in" after the shooting and had been in custody since then. He had no history of gun violence, no connection to the victims, and was not a flight risk. Defendant explained he had family in the community and would abide by any conditions imposed. Additionally, he had a daughter who received cancer treatments in St. Louis and a son who had a brain tumor.

¶ 13        The State responded that none of defendant's claims established a change in circumstance, as the information presented had been proffered at the initial detention hearing. The State reiterated (1) a neighbor identified defendant as the individual who shot at the juveniles after they had already left the house, (2) defendant shot at the juveniles "in a residential area in the middle afternoon," and (3) no conditions would prevent defendant from obtaining firearms in the future.

¶ 14        The trial court concluded defendant's continued detention was necessary to avoid a real and present threat to the safety of the community, determining there was "not a substantial change in circumstances" and noting the alleged "violence is too great" to permit defendant's

release.

¶ 15 On August 20, 2025, the grand jury returned an indictment charging defendant with the three offenses alleged in the complaint.

¶ 16 On October 22, 2025, defendant appeared in court and pleaded guilty to the offense of possession of cannabis in case No. 25-CF-465, for which he was sentenced to two years of probation. Following that plea, defendant again argued his detention was no longer necessary in the instant case because a change of circumstances warranted his release. As support, defendant presented the notarized statement of Jamario Thomas, the neighbor who had previously identified him as the shooter. In his notarized statement, Thomas stated he did not see or witness defendant commit any of the crimes alleged by the State. Defendant also noted he was "just found to be probation worthy" in case No. 25-CF-465, further warranting his release.

¶ 17 The State responded that there was no change in circumstances. Despite Thomas's recantation, two of the victims had also identified defendant as the perpetrator. Beyond that, the State emphasized that several other neighbors observed the shooting, which involved 11 shots in "broad daylight" at a house that was "related to cannabis."

¶ 18 The trial court again concluded defendant's continued detention was necessary. The court rejected defendant's argument that a sentence of probation in a separate case constituted a change in circumstances and warranted his release in the current case. The court further explained that nothing altered the determination that defendant posed a danger to the community.

¶ 19 C. Motion for Relief

¶ 20 On November 12, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). Therein, defendant argued that by denying him pretrial release the trial court erred in concluding he posed a danger to the community. Defendant

asserted that he had been placed on probation in case No. 25-CF-465 and agued "the State's case is getting weaker," considering Thomas recanted his claim defendant was the shooter. Defendant asserted the court also "erred in finding that no condition or combination of conditions could reasonably mitigate any danger" he posed. Specifically, he "had no prior criminal history," and any threat could be mitigated by conditions such as home confinement, location monitoring, and prohibitions relating to the possession of weapons and contact with the victims.

¶ 21    The trial court held a hearing on the motion on November 14, 2025. At the hearing, defendant emphasized the State's case was "weaker" due to Thomas's recantation and further noted "there are witnesses" alleging the victims were attempting to rob the house where the shooting occurred. Defendant also claimed the court "erred" with regard to its decision no conditions could mitigate any danger he posed. He explained he was employed prior to his arrest, and the fact he surrendered to police after an arrest warrant was issued suggested he would abide by any conditions imposed by the court. He acknowledged, however, he was on pretrial release at the time of the shooting.

¶ 22    In response, the State argued "the original Court made the correct decision in detaining the defendant," noting the evidence established defendant posed a danger to the community and no condition or combination of conditions could mitigate that danger. The State explained defendant was identified by two of the three people who fled from the home as the individual who shot at them and struck the victim in the head. The State asserted neither home confinement nor location monitoring could "prevent this from happening" again.

¶ 23    The trial court rejected defendant's arguments and denied defendant's motion for relief. The court noted the issues before it were whether defendant "is a danger and continues to be a danger, and whether there has been a change in circumstances such that that danger can be

mitigated such to depart from the initial order finding that no condition or combination of conditions could mitigate the danger" defendant posed. The court explained it considered the contents of defendant's motion for relief, the arguments posed by counsel, and the relevant authorities. The court concluded in granting the initial order of detention, the "findings were then and they are now" that defendant committed a detainable offense, he posed a danger to the community, and no condition or combination of conditions could mitigate the danger he posed. The court also found it did not believe "much if anything has changed since the [initial] order" of detention.

¶ 24        This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26        On appeal, defendant filed a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) asserting the State failed to meet its burden of proving (1) he posed a real and present safety threat to any person, persons, or the community and (2) no conditions could mitigate any such safety threat.

¶ 27                        A. Law and Process for Pretrial Detention

¶ 28        "Illinois law now presumes all defendants are eligible for pretrial release." *People v. Morgan*, 2025 IL 130626, ¶ 24; 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024). However, the trial court is permitted to deny a defendant pretrial release when the State files a verified petition and shows by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate this threat. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2024); see *Morgan*, 2025 IL 130626, ¶ 24.

¶ 29 Where a defendant is detained, it is incumbent upon the trial court to find "[a]t each subsequent [court] appearance" that continued detention is necessary to prevent a threat to safety (or to prevent the defendant's willful flight, if detained on that basis). 725 ILCS 5/110-6.1(i-5) (West 2024). The defendant is not required to bring a motion to trigger this review. *People v. Walton*, 2024 IL App (4th) 240541, ¶ 22. The defendant must, however, demonstrate the existence of some new information or change in circumstance "in order to demonstrate a *right* to a change in detention status." (Emphasis in original.) *Id.* ¶¶ 28, 31. Because a defendant is required to show a change in circumstances at a subsequent review hearing, it is evident that new information may be tendered to the court—presumably by either side—at such a hearing.

¶ 30        B. Appeal of a Detention Decision

¶ 31 A variety of detention-related orders are appealable under Rule 604(h): an order imposing conditions of release, an order granting or denying pretrial release, and an order revoking pretrial relief or denying a motion requesting revocation. Ill. S. Ct. R. 604(h)(1) (eff. Apr. 15, 2024). This would include an appeal from an order for continued detention made at a subsequent review hearing, though such appeal could not be taken if there was already a pending appeal of a prior detention order. Ill. S. Ct. R. 604(h)(11) (eff. Apr. 15, 2024); see, *e.g.*, *Walton*, 2024 IL App (4th) 240541, ¶ 35 (noting that case was an appeal of a continued detention finding).

¶ 32 The only time limit for appealing a detention order is that it must be filed "prior to conviction." Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024). "As a prerequisite to appeal" of a detention ruling, the prospective appellant must first "present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The fact that a detention order need not be immediately appealed means there may be multiple orders for a defendant's detention by the time an appeal is taken, *i.e.*, the original

detention order and continued detention orders entered at each subsequent court date pursuant to section 110-6.1(i-5). 725 ILCS 5/110-6.1(i-5) (West 2024).

¶ 33    The supreme court has provided form notices of appeal to be used in detention appeals, and the form notice does not require the appellant to specify which specific detention rulings it is appealing from. See *People v. Powell*, 2025 IL App (4th) 241356-U, ¶ 37 (citing *People v. Burries*, 2025 IL App (5th) 241033, ¶¶ 17-18). "[T]here is no requirement on the standardized notice of appeal form to list the date of any order other than the order on the motion for relief." *Burries*, 2025 IL App (5th) 241033, ¶ 17.

¶ 34    In this appeal, defendant was ordered detained at an initial hearing, and the trial court found at subsequent hearings that detention was still necessary. In his argument, defendant discusses the issues in terms of the evidence raised at the initial detention hearing as well as the evidence presented at a subsequent review, Thomas's recantation statement. For its part, the State focuses on the latter hearings, stating that "defendant is appealing from the trial court's decision regarding continued detention." This causes us to first explore how we should approach the case when defendant's detention results from multiple orders. We see essentially two alternatives.

¶ 35    First, we could examine each order separately without regard to evidence received at a different hearing. Under this approach, a defendant could put only *one* detention order at issue, thus asking us to surgically examine the sufficiency of just that order based on only the evidence presented at that hearing. The potential for an absurd result seems apparent. The question of detention might have been a close case at the original hearing, but what if highly probative information was learned at a subsequent review hearing; should the court ignore the latter? Additionally, if individual detention rulings are considered independent of each other, would reversal of the original detention decision result in a defendant remaining incarcerated on the

strength of a *subsequent* detention decision?

¶ 36　　　　Alternatively, we could view a defendant's detention to be the cumulative result of evidence heard or information learned at every detention hearing. This strikes us as the proper approach, as looking at each detention decision with blinders on is both artificial and out of step with the nature of the multiple decisions made in the trial court. As we have previously noted, "review of the necessity for continued detention *** cannot, as a practical matter, be undertaken without reference to the reasons for the original detention decision." *Walton*, 2024 IL App (4th) 240541, ¶ 37 (referencing the decision to continue detention after revocation of pretrial release). Consequently, in this case we examine the basis for defendant's continued detention based on the record developed at any detention hearing, be it the original hearing or a subsequent review.

¶ 37　　　　We note that *People v. Williams*, 2024 IL App (1st) 241013, ¶ 29, suggests that a hearing on a motion for relief would be limited to "an examination of the State's evidence at the initial detention hearing." The relevant issue in *Williams* was whether additional evidence could be received at the motion for relief hearing, a question not presented here and on which we make no comment. However, we do not believe that *Williams* stands for the proposition that the motion for relief hearing should be limited to consideration of only the evidence received at the *initial* detention hearing to the exclusion of new evidence received at subsequent detention review hearings. Such an approach would insulate interim detention rulings from review. The motion for relief is a prerequisite to appeal from *any* of the various detention orders in a case, so evidence received at any and all of them is appropriate to be considered when deciding the motion for relief and, consequently, appellate review.

¶ 38　　　　　　　　　　　　　　C. Standard of Review

¶ 39　　　　The foregoing discussion has implications with respect to the proper standard of

review on appeal. If multiple detention rulings (*i.e.*, the original detention as well as subsequent trial court review decisions) were reviewed on appeal as completely separate and independent orders, then the standard of review for one might differ from one order to the next. However, if the detention orders are instead viewed as cumulative determinations, each building on the ones that came before it, then arguably only the same standard of review might be employed.

¶ 40　　　　　In *Morgan*, the supreme court decided that the standard of review "when examining a circuit court's ultimate detention decision under section 110-6.1" depended upon the nature of the evidence received. *Morgan*, 2025 IL 130626, ¶¶ 24, 28-29. Where testimony is received, the decision is reviewed under the manifest weight standard of review. However, when the decision is based on only proffer or documentary evidence, the standard is *de novo. Id.* The supreme court did not address the standard of review when subsequent detention findings are also at issue. However, that issue is now before the supreme court. *People v. Post*, 2025 IL App (4th) 250598, *pet. for leave to appeal granted*, No. 132403 (Ill. Nov. 21, 2025) (finding that the standard of review on appeals from subsequent detention orders is abuse of discretion).

¶ 41　　　　　We need not engage with the question of whether the standard of review is different for different detention decisions in the same case because, as discussed below, we find that the trial court's decision here survives scrutiny under any standard of review, whether *de novo*, manifest weight, or abuse of discretion.

¶ 42　　　　　　　　　　　D. Dangerousness

¶ 43　　　　　Defendant first argues the State failed to prove he posed a real and present threat to the safety of any person or the community. Specifically, he asserts the State proffered no evidence indicating he threatened future violence against anyone, relying instead on the unproven allegations asserted in the charges alone to justify his detention. He further contends evidence

presented at a subsequent hearing that Thomas recanted his statement identifying defendant as the shooter "establishes he is less dangerous than the court initially believed."

¶ 44 With respect to Thomas's recantation, defendant has inaptly suggested that it is pertinent to the question of dangerousness. In our view, Thomas's statement, and his subsequent recantation of it, relate to the question of whether the trial court correctly concluded that "the proof is evident or presumption great that the defendant committed" a detainable offense. 725 ILCS 5/110-6.1(e)(1) (West 2024). Thomas offers no insight into whether defendant presents a potential danger in the future, only whether he committed the offense charged by the State. The evidence that defendant committed the charged offense is relevant to assessing his dangerousness, even if it is not alone sufficient to justify detention. See *People v. Romine*, 2024 IL App (4th) 240321, ¶ 19 (holding that the trial court does not simply review the charging instrument to determine dangerousness). Still, the question of *whether* defendant committed the offense is a different inquiry than the question of whether, *as a result* of that act and other factors, he presents a danger to others. Here, defendant has not appealed from the trial court's finding that he likely committed the offense in question, and Thomas's affidavit is arguably of no relevance to the dangerousness finding he has appealed.

¶ 45 With regard to the question appealed—whether defendant posed a threat to the safety of other persons or the community—the Code provides factors to be considered with the "specific articulable facts of the case" in determining whether a defendant presents a real and present threat. 725 ILCS 5/110-6.1(g) (West 2024). The assessment of a defendant's dangerousness must be "individualized," and "no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7). The evidence here shows that defendant stepped out of a residence at which cannabis was known to be sold and shot at the juvenile victims 11 times as they

- 12 -

were leaving in their vehicle. The shooting occurred during the day at a busy intersection while neighbors were outside, risking injury to them and to passersby. Defendant possessed the firearm used in the shooting despite having no FOID card, and he committed the instant offenses while on pretrial release for another offense. Even if Thomas's recantation were relevant to the issue of dangerousness, two of the victims who identified defendant as the shooter did not recant their identifications.

¶ 46          Given the foregoing, we conclude that under the specific, articulable facts of this case, the State proved by clear and convincing evidence that defendant poses a real and present threat to the community, regardless of the standard of review employed.

¶ 47                                            E. Conditions

¶ 48          Defendant also argues the State failed to prove no conditions could mitigate any threat he posed. Specifically, defendant contends any danger he posed could be reasonably mitigated by conditions of release limiting him to his home, prohibiting him from contacting the victims, and imposing electronic monitoring.

¶ 49          A finding of dangerousness alone does not automatically warrant pretrial detention. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18. "Instead, the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* "In each case, a court must conduct an 'individualized' assessment of the propriety of detaining the defendant versus releasing him or her with conditions." *Id.* ¶ 15. The court is required to consider a list of factors (725 ILCS 5/110-5(a)(1)-(5) (West 2024)), and "no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 50          We find defendant's argument unconvincing. Although defendant argued that he

would abide by any conditions that might be imposed by the trial court, the evidence presented by the State undermines that assertion. While it is true defendant does not have a lengthy criminal history, he was nevertheless willing to commit the instant offenses, including a violent shooting in a busy neighborhood, while already on pretrial release for a separate cannabis related charge, undermining confidence that he would comply with any conditions imposed. Moreover, despite that pending cannabis charge, the record shows defendant was found to be present—and, apparently, defending—a house where several pounds of cannabis were packaged and labeled for sale. Even if electronic monitoring, home confinement, and an order not to contact the victims were imposed, defendant's pattern of conduct, which shows a predilection for undermining the law, suggests they would not prevent defendant from engaging in conduct endangering the community.

¶ 51　　　　　Under the specific, articulable facts of this case, we conclude the State proved no condition or combination of conditions exist that could mitigate the danger defendant posed to the community, regardless of the standard of review employed.

¶ 52　　　　　　　　　　　　III. CONCLUSION

¶ 53　　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 54　　　　　Affirmed.

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 25-C-945; the Hon. Jack D. Davis II, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Bryon M. Reina, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |