NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251088-U

NO. 4-25-1088

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 13, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| MAKENNA RHODES, | ) | No. 24CF489 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, finding the trial court did not abuse its discretion
when it determined no new information or change in circumstances warranted a
change in the original detention order and defendant's continued detention was
necessary to avoid a real and present threat to the safety of any person or persons
or the community.

¶ 2     Defendant, Makenna Rhodes, was charged with the first degree murder of

10-month-old S.Z., a child who died while in defendant's care as her babysitter. Defendant was

denied pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/art.110 (West 2024)). This court affirmed. *People v. Rhodes*, 2025 IL App (4th)

241156-U, ¶ 95. Subsequently, defendant filed a motion for release from pretrial detention based

on changes in circumstances pursuant to section 110-6.1(i-5) of the Code (725 ILCS 5/110-6.1(i-

5) (West 2024)). After a hearing, the trial court determined defendant's continued detention was

necessary to avoid the real and present threat she posed based on the specific articulable facts of

the case. Defendant filed a motion for relief, which was denied. On appeal, defendant argues she presented new evidence establishing she posed a lesser safety threat and any threat she still posed could be mitigated with conditions of release. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                    A. Initial Pretrial Detention Proceedings and Appeal

¶ 5            In July 2024, defendant was charged with one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2024)). The information alleged on June 26, 2024, defendant applied pressure with a foreign object to the face of S.Z., a child under 12 years of age, knowing such act created a strong probability of death or great bodily harm to S.Z. and thereby causing the child's death. See *id.* That same day, the State filed a verified petition to deny pretrial release, alleging defendant was charged with a detainable offense and her pretrial release posed a real and present threat to the safety of any person or the community based on the specific articulable facts of the case. After a lengthy hearing, which this court discussed in great detail in our decision in the original appeal (*Rhodes*, 2025 IL App (4th) 241156-U, ¶¶ 10-47), the trial court denied defendant pretrial release. Defendant filed a "hybrid" motion for relief, seeking review of the decision to deny her pretrial release and arguing a change in circumstances had occurred, warranting a reconsideration of the denial of her pretrial release. The trial court denied the motion. Thereafter, defendant filed a second motion for relief based on the claim regarding a change in circumstances, which was also denied. The trial court consolidated both motions for appeal. This court affirmed the trial court's judgment. *Id.* ¶ 95.

¶ 6            B. Defendant's Motion for Release Based on Change in Circumstances

¶ 7            In August 2025, defendant filed a "Motion for Release from Pretrial Detention and/or Motion for Relief," contending that a number of circumstances had changed since entry of

the original detention order, which warranted her pretrial release. Specifically, she contended (1) as of August 25, 2025, she had been in jail for 404 days, held in segregation because of the nature of her charge and not her behavior; (2) she had been a "model prisoner" and committed no disciplinary infractions; (3) the jail commander and an officer would testify as to defendant's compliance with jail rules, "low level of risk," and lack of "inappropriate emotional outburst, violent behavior or inappropriate behavior, even though she has been housed with detainees who are difficult and don't follow rules and many times have mental health issues"; (4) she had engaged in counseling and other services to address her anxiety and postpartum depression; (5) she continued to have no criminal history and committed no offenses during the pendency of the case; (6) she had strong family and community ties; (7) she had no history of drug or alcohol abuse; (8) five adults signed affidavits and attested to their agreement to serve as third-party custodians, observe her at all times, and report any suspected pretrial services violations; (9) defendant's mother, agreed to ensure defendant would have no contact with B.L., defendant's minor child, if granted release; and (10) Tyrus Lewis, B.L.'s father, has had no contact with defendant for several months, and B.L. was placed with Tyrus's sister, Alicia Lewis, because she had not had any contact with defendant. Defendant contended further there was new information that "casts doubts on the strength of the State's evidence" against defendant, including: (1) defendant's statements that she " 'didn't mean to' " harm the child, which was "more consistent with an involuntary manslaughter act as opposed to First Degree Murder"; (2) evidence at the pretrial detention hearing regarding an alleged injury to another child in defendant's care was contradicted by other statements of witnesses and medical records; (3) defendant's lack of incidents while in the stressful situation of being jailed for over a year dispelled the trial court's original concerns with her impulse control; and (4) the court was

concerned about defendant and her family being able to follow a no-contact order between defendant and her child, and defendant contended, "given several months have transpired without any contact[,] the incentive to violate a Court's order has been diminished." Defendant contended, if released, she would not have any access to children; thus, she no longer posed a threat to anyone. She contended stringent conditions, such as home confinement, GPS monitoring, third-party monitoring, a no-contact order, and pretrial services supervision, would ensure the safety of any person or persons or the community.

¶ 8        A hearing was held in September 2025. Defense counsel proffered the statements of Commander Aaron Hoffman, the jail operations supervisor for the Tazewell County jail, and two corrections officers who worked at the jail, Jeff Stocke and Darrell Slaven. The three officers described their interactions with defendant while she was in jail as respectful and polite. They stated defendant had followed the rules, respected authority, and not acted inappropriately or had any disciplinary reports. They all stated they believed, based on their interactions with defendant, she would not pose a threat to any member of the public if she were released. Defense counsel also proffered that five people had previously filed affidavits attesting to their willingness to supervise defendant if she were granted pretrial release. Defendant's mother attested further she was willing to pay for the cost of video cameras to record anyone in her home and any other recording devices needed to ensure defendant's full compliance with any conditions of release. Defense counsel also asked the trial court to "take judicial notice that involuntary manslaughter is a probationable offense; hence, it would be in [defendant's] interest to be in complete compliance with all pretrial conditions because if she were to be convicted of involuntary manslaughter, it would strengthen her argument for probation or time served." The court noted, and defense counsel confirmed, defendant was not making any decision or claim

regarding any lesser-included offenses or defenses at that time.

¶ 9 The State proffered portions of an interview of four-year-old Brin. G. conducted by the Tazewell County Child Advocacy Center (CAC) in July 2024. In that interview, Brin. G. stated her younger brother, Bria. G., fell off the couch and broke his arm. Brin. G. knew this because Ben. G., her five-year-old brother, saw it happen and told her. Brin. G. did not know where defendant was when this happened. Brin. G. stated defendant was nice to her but mean to Bria. G. The State proffered the testimony of Tiffany Potter, the mother of these three children, whose testimony was also proffered at the original detention hearing. Tiffany would testify that on the day Bria. G. was injured while in defendant's care, only Bria. G. and Brin. G. were at defendant's home because Ben. G. had a doctor's appointment.

¶ 10 In response, defense counsel stated there may have been a "misimpression" of prior abuse of other children by defendant. He stated the "full context of that which I expect the State will concede is when [Brin. G. was] questioned as to why or how [defendant] was mean to her is because [defendant] made [Bria. G.] sit on the toilet." Defense counsel stated further that Tiffany's statement shows Brin. G's statement was inconsistent and the medical records provided show the child's arm was not fractured. The trial court interjected that to say there was no fracture was not a "fair summary" of the medical records because while the X-ray did not reveal a fracture, the doctor's interpretation was that there was "a questionable fracture" (referred to in the medical records as a "questionable radiographically occult fracture"), and the injury was treated by placing his arm in a long-arm cast as a precaution.

¶ 11 Defense counsel argued defendant had been jailed for over a year and exposed to a very stressful situation without acting out in any manner. She was an "outstanding student" when she was in school, and she "had never been suspended, *** was never violent, [and] had

never had any inappropriate emotional reactions prior to the alleged incident." Defense counsel argued if defendant was released, "compliance is in her own self-interest," and "she has demonstrated time and time again that she can control any emotional outburst that the Court expressed and was concerned about." When asked by the trial court what was "new" evidence, defense counsel replied the new evidence was the proffer regarding the alleged injury to the other child in defendant's care and the medical records. Defense counsel also pointed to his proffer regarding defendant's behavior in jail—respecting authority and having no instances of misconduct despite it being a stressful situation—as new evidence. Counsel described it as "a year of affirmative evidence of her being in compliance with orders." As to the previous concern about defendant having contact with her son while in jail, defense counsel argued that concern had since been eliminated. He argued home confinement with third-party custodial monitoring, GPS monitoring, and video monitoring were conditions that could mitigate any threat defendant might pose.

¶ 12        The State argued defendant had not presented any new information or any change in circumstances that should result in defendant being released from custody. The State argued defendant's "good behavior in jail" did not eliminate the threat she posed and every reason given for denying her pretrial release still stood. Defendant's argument for her release being conditioned on having third-party custodians was presented at the prior hearing and rejected, "and all the prior reasons that were applicable then are applicable now." The State argued home confinement and GPS monitoring would be ineffective, as they would not detect what defendant was doing or whom she was with. The State asserted defendant's family could not be trusted to enforce a no-contact order between defendant and her child.

¶ 13        After extensive argument, the trial court found that there was some change in

circumstances to be considered but defendant's continued detention was necessary to avoid a real and present threat to the safety of a person or persons in the community, including her own child.

¶ 14        Defendant filed a motion for relief arguing the State failed to clearly and convincingly prove she posed a threat to any particular person, the new evidence established a change in circumstances that warranted her release, the trial court erred in finding in-home cameras were impractical when defendant's mother was willing to pay for them to be installed in her home, and the court erred in ordering her continued detention when there were conditions that would significantly mitigate any threat. In denying the motion, the court concluded that in-home cameras were impractical because, as the State reported, pretrial services could not feasibly monitor them.

¶ 15        This appeal followed.

¶ 16                              II. ANALYSIS

¶ 17        On appeal, defendant argues she presented new evidence that changes in circumstances occurred after the initial detention hearing establishing that she posed a lesser safety threat than initially determined and any threat she posed could be mitigated with conditions of release. Thus, the trial court erred in ordering her continued pretrial detention. We disagree.

¶ 18        When a defendant is detained at the initial detention hearing under the dangerousness standard, the Code requires "[a]t each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(i-5) (West 2024). In *People v. Post*, 2025 IL App (4th) 250598, ¶ 25, this court explained the fundamental difference between an initial order

of detention and an order of continued detention:

> "When issuing an order of detention, the trial court begins with the presumption a defendant should be granted pretrial release unless certain criteria are met and the State meets its burden of proving the necessity for pretrial detention. [Citation.] When issuing an order of continued detention, however, the detention decision has already been made and often already subject to appellate review *** so the question relating to whether the State proved each of the three propositions for pretrial detention by clear and convincing evidence during the initial hearing is not before the court."

Recognizing the Code sets forth no standard of proof for a finding regarding a defendant's continued detention, in *People v. Walton*, 2024 IL App (4th) 240541, ¶¶ 28-29, we determined a showing of " 'new information or a change in circumstance' " is required for relief under this provision of the Code, reasoning, "[i]f a court has found that a defendant qualifies for detention and no new information or change in circumstances is presented, it makes little sense to think that court would reverse its prior ruling for no particular reason." Although the original detention decision is not under review, consideration of the necessity for continued detention cannot, as a practical matter, be undertaken without reference to the reasons for the original detention decision. *Id.* ¶ 37. "[T]he original detention order is always the context against which a subsequent review must be measured. It is the baseline from which to assess the significance of any alleged change in circumstances or new information." *Id.*

¶ 19    A trial court's decision regarding continued detention under section 110-6.1(i-5) of the Code is reviewed for an abuse of discretion. *Post*, 2025 IL App (4th) 250598, ¶ 29. A

reviewing court will find an abuse of discretion occurred if the trial court's "decision is arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted by the [trial] court." (Internal quotation marks omitted.) *Walton*, 2024 IL App (4th) 240541, ¶ 33.

¶ 20　　　　　　　A. Change in Circumstances Regarding Defendant's Safety Threat

¶ 21　　　　　　In support of her argument that she poses a lesser safety threat than she did after the initial detention hearing, defendant points to the following as new evidence or changes in circumstances: (1) the uncertainty as to the custodial arrangements for her child, B.L., had been resolved, and because B.L. had been placed with Alicia, any concerns that defendant may have access to B.L. were eliminated; (2) proffered evidence and medical records showed the circumstances under which another child was injured in her care was not as serious as it was represented at the initial hearing and was not caused by defendant; rather, it was caused by the child falling off a couch; (3) her behavior while in jail for more than 400 days demonstrated she had the ability to control her emotions in a stressful environment and proved she was a lesser safety risk than originally determined; and (4) the trial court's comments suggested its appreciation that defendant was unlikely to reoffend when it referenced the possibility of imposing a 30-day jail sanction for "technical violations" and not also the possibility of revoking pretrial release for more serious violations. After our careful review of the record, we conclude the trial court did not err in determining, despite defendant's claims of changed circumstances, her continued detention was necessary to avoid a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case.

¶ 22　　　　　　At defendant's original detention hearing, the trial court expressed concern about the lack of involvement by the Illinois Department of Children and Family Services given that defendant, the mother of an infant child, was charged with the first degree murder of another

infant in her care. Thereafter, at the hearing on defendant's first hybrid motion for relief and motion to reconsider pretrial detention based on a change in circumstances, these concerns were addressed again, and there remained uncertainty at the time as to whom B.L. had been placed with—the only information reported was that B.L.'s custodian was a family member and certain family members were excluded from having custody. Those circumstances had changed, or at least clarified, with the new information presented by defendant. Defendant proffered that B.L. was in the custody of her paternal aunt, Alicia, and defendant had no relationship with Alicia. Defendant also was no longer in a relationship with B.L.'s father. This information may reveal the current status of B.L.'s custody and care; however, it does not alleviate the concerns the court had at the time regarding defendant's family honoring a no-contact order. The circumstances that led the court to be concerned that, if given the opportunity, defendant's family members would violate a no-contact order have not changed.

¶ 23       Furthermore, the proffered testimony that the injury sustained by another child while in defendant's care was not as serious as stated at the original hearing is also insufficient to justify a change to the original detention order. At the original hearing, Tiffany's proffered testimony was that Bria. G. suffered an arm fracture while in defendant's care, the injury occurred when the child was left unattended by defendant, and defendant gave three separate explanations for the cause of the injury. The new evidence presented—portions of a CAC interview and the proffered testimony of Tiffany—indicated that Bria. G. was injured after falling from the couch, defendant was not present when it occurred, and the injury was not, in fact, a fracture, but was treated as a fracture as a precaution. This information merely clarified the circumstances surrounding Bria. G.'s injury while in defendant's care. We reject defendant's contention that it somehow showed defendant was "less dangerous than previously determined."

¶ 24　　　　We also determine that defendant's behavior in jail, while commendable, is not "new evidence" that she is now "less dangerous" because she has been able to control her emotions, has not exhibited any violent outbursts, and has followed the rules. Rather, her behavior in jail is the expected outcome of her confinement in a restricted environment, which the trial court deemed necessary at the original detention hearing. It does not represent a change in circumstances with respect to defendant's dangerousness, nor does it warrant a change in the original detention decision.

¶ 25　　　　Finally, defendant mischaracterizes a discussion the trial court engaged in with defense counsel when she suggests the court's comments regarding possible sanctions for violations of conditions of release "reflect[ed] its appreciation that [defendant] is unlikely to reoffend and poses no substantial safety threat." Defense counsel was asked by the court what he believed would happen if defendant violated a condition of release, and defense counsel replied, "I think if there's a single violation, I think—honestly, if you release her and one kid came over there and you found out about it, she would be revoked." The court corrected defense counsel, stating revocation is not a possible result of a violation of a condition of release unless that violation involves a felony or Class A misdemeanor. See 725 ILCS 5/110-6(a) (West 2024). In this regard, the court expressed its concerns with the statute's limitation on revocation when violations occur, noting a *sanction* may only include imprisonment for up to 30 days. See *id.* § 119-6(f)(2). The court was in no way commenting on defendant's threat or likelihood of reoffending.

¶ 26　　　　B. Change in Circumstances Regarding Conditions to Mitigate Any Threat

¶ 27　　　　Defendant argues she presented new evidence to prove that conditions could be put in place to mitigate any safety threat she still posed, and thus, the trial court should have

found her continued detention was not warranted. In support, defendant states her mother was employed and had the resources to pay for the installation of surveillance cameras in every room of her home and agreed to permit pretrial services to monitor them; her good behavior showed she would abide by any conditions placed on her release; and "the possibility of an involuntary manslaughter defense and probationary sentence[ ] enhanced the likelihood of compliance with conditions."

¶ 28    It is important to note that "subsection (i-5) starts from the premise that detention *was* necessary to guard against a threat and asks whether anything has changed so that detention is no longer warranted." (Emphasis in the original.) *People v. Newell*, 2025 IL App (2d) 250315-U, ¶ 26. At a continued detention hearing, the trial court is not tasked with deciding whether pretrial conditions could mitigate the threat posed, as that decision was made at the initial detention hearing. See *Post*, 2025 IL App (4th) 250598, ¶ 25. The court's task is to determine whether a change in circumstances has been shown or new information has been presented that undermines the original conclusion that the defendant's detention was necessary to prevent a real and present threat. On review, we must determine whether new information was presented such that the initial detention is no longer necessary. *People v. Thomas*, 2025 IL App (1st) 250251-U, ¶ 26.

¶ 29    At defendant's original detention hearing, the trial court considered GPS monitoring, home confinement, third-party custodial monitoring, and no-contact orders as possible conditions of release and determined that these conditions were insufficient to mitigate the real and present threat defendant posed. Defendant contends her mother is willing and able to fund the installation of video cameras in every room of her home to provide 24-hour surveillance and is also willing to allow pretrial services to monitor them. While this may be new

information, it cannot be considered a change in circumstances sufficient to justify a change in defendant's pretrial detention order. Notably, the court raised valid concerns about the feasibility of pretrial services providing such monitoring, and we agree the resources and technology required to monitor a private homeowner's 24-hour surveillance camera system make such monitoring impractical. Defense counsel's response was that defendant's mother might "be willing to pay for, like, Burns Security" (a private security company) to monitor the cameras. We agree with the trial court that such a proposition was "absurd," as it presented its own challenges, in terms of logistics, legality, and enforcement, that we need not expand upon here. The bigger point is that this new information does not undermine the court's original decision that defendant's detention was necessary to prevent a real and present threat to any person or persons or the community.

¶ 30        Likewise, defendant's remaining contentions ask this court to revisit the original detention decision or otherwise speculate on a potential defense that could, if invoked and if ultimately accepted by the trier of fact, result in a lesser conviction in this case. Neither of these contentions present new information establishing that defendant's detention is no longer necessary.

¶ 31        Therefore, we conclude the trial court did not abuse its discretion when it determined defendant's continued detention was necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.

¶ 32                                    III. CONCLUSION

¶ 33        For the reasons stated, we affirm the trial court's judgment.

¶ 34        Affirmed.

- 13 -