NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251272-U

NO. 4-25-1272

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 23, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| ANTOINE PERSON, | ) | No. 24CF1726 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Amy Peterman, |
| | ) | Jennifer J. Clifford, |
| | ) | Judges Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justice Cavanagh concurred in the judgment.
Justice Lannerd specially concurred.

**ORDER**

¶ 1     *Held*: The appellate court affirmed the trial court's order denying defendant pretrial release, concluding there was no condition or combination of conditions to mitigate the real and present safety threat defendant posed based on the specific articulable facts of the case.

¶ 2     Defendant, Antoine Person, appeals the trial court's order denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)). In accordance with Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), defendant relies upon his motion for relief filed in the trial court as his argument on appeal. In his motion, defendant argues the court erred in denying his pretrial release because the State failed to prove no conditions existed to mitigate the real and present safety threat he posed and new evidence presented at a subsequent detention hearing did not justify his release. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                        A. The Charges and Original Detention Proceedings

¶ 5            On July 11, 2024, the State filed a two-count complaint against defendant for aggravated domestic battery (720 ILCS 5/12-3.2(a)(1), (b) (West 2024)), a Class 2 felony, and domestic battery (*id.* § (a)(2), (b)), a Class 4 felony. The charges arose from an incident that occurred between defendant and his girlfriend at the time, Kandise L. Jackson, wherein defendant allegedly punched Jackson in the face several times, severely injuring her and breaking her jaw. On July 12, 2024, the State filed a petition to deny defendant pretrial release, alleging defendant was charged with a detainable offense, the proof was evident and presumption great that defendant committed the offense, and his pretrial release posed an unmitigable real and present threat to the physical safety of any person or persons or the community. See 725 ILCS 5/110-6.1(a)(4) (West 2024)). A detention hearing was held that day before Judge Amy Peterman.

¶ 6            The State relied upon the factual summary accompanying the charges, which stated the following. On July 11, 2024, Rockford Police Officer Sarah Stinson responded to a call from Jackson, who reported defendant was her ex-boyfriend and he "battered her and broke her jaw on Tuesday and he was currently at her apartment." Jackson told Officer Stinson that on July 2, 2024, at 3 or 4 a.m., she, defendant, and some of his friends were hanging out in front of her apartment building when she and defendant got into an argument. Defendant punched her in the face, fracturing her jaw and causing her to black out. After Jackson regained consciousness, defendant helped her walk upstairs to her apartment. Defendant then returned to clean up Jackson's blood, which was in the hallway, stairwell, and outside entry of the building. Defendant "gave her 2 Norco pills for the pain." Later that day, defendant took Jackson to SwedishAmerican Hospital. On the way to the hospital, defendant told Jackson to explain that she was injured in a four-wheeler

accident and made her rehearse the story several times. Jackson had a fractured jaw. She explained that she did not call the police that day or in the several days that followed because she was in so much pain she could not talk and defendant was with her most of the time. Jackson stated she had dated defendant for about three years and "their relationship got physical about 10 times in the past." Jackson reported things escalated each time, the police had been called twice, and two arrests had been made.

¶ 7 According to the factual summary, defendant reported he and Jackson "never had an argument or disagreement of any sort and it had never gotten physical between them." He denied ever hanging out in front of Jackson's apartment building. Defendant had a prior domestic battery arrest, with Jackson as the victim, on January 27, 2024 (Winnebago County case No. 24-CF-214). The police obtained video surveillance footage, which was described in the factual summary as showing Jackson and defendant outside of the apartment building at the time of the alleged incident. It reportedly showed defendant punching Jackson several times, causing her to fall to the pavement, and defendant striking her again. Defendant is reportedly seen in the video helping Jackson get to her feet, walking her upstairs, and returning with a bucket and a mop to clean up the blood.

¶ 8 The State further proffered officers had been dispatched to Jackson's address on January 27, 2024, regarding a domestic battery. Jackson called police and reported defendant had battered her. When police arrived, defendant refused to allow officers in the residence. Jackson was standing behind defendant, and officers noted her mouth was bloodied and her lips were swollen. Defendant let the officers in, and Jackson told them defendant punched her three times in the mouth as he dragged her out of her friend's apartment. She explained she was afraid of defendant and wanted him arrested. Jackson also told officers defendant had battered her and

strangled her over 15 times during their relationship, but she had never reported the incidents. Defendant was arrested and subsequently pled guilty to domestic battery and was placed on probation for 24 months. One of the conditions of his probation was to have no contact with Jackson or her residence. The State proffered that in June 2022, law enforcement responded to a report from defendant's ex-girlfriend alleging that he had struck her twice with an open hand. In June 2019, the police were called because defendant made comments about having firearms in front of Metro security officers. At that time, defendant was arrested for criminal trespass to land and obstructing identification.

¶ 9 The State proffered defendant's pretrial services investigation report (PSI). According to the PSI, defendant had a history of drug and alcohol use but claimed he did not believe he had a substance abuse problem. Defendant reported he had been diagnosed with schizophrenia and depression. He reported he had suicidal thoughts in January 2024, but he had no current suicidal or homicidal thoughts. Defendant was on probation, serving 24-months' conditional release for domestic battery, and was under a no-contact order with Jackson. Defendant was previously on probation for aggravated discharge of a firearm and was discharged from that conditional release in January 2022. Defendant had "prior criminal convictions for assaultive/violent, obstruction, property, resisting and weapons related offenses." Defendant scored an 8 out of 14 on the Virginia Pretrial Risk Assessment-Revised (VPRAI-R), which placed him at a high risk (level 4) of recidivism. Defendant received a score of 18 out of 30 on the Domestic Violence Screening Instrument (DVSI). A score of 11 is where a high risk begins on the DVSI, and defendant's higher score indicated an increasing likelihood of future intimate partner violence.

¶ 10 The State argued defendant posed a real and present threat to the safety of the

- 4 -

community and, most notably, Jackson and there were no conditions of release that would mitigate defendant's threat. The State argued defendant was on probation for domestic battery and ordered to have no contact with Jackson for an incident that occurred in January 2024, when this incident occurred. In response, defense counsel argued it was "not necessary to have [defendant] detained at this time" and he would abide by any conditions of release the trial court imposed. Defense counsel pointed out that defendant had been living with his sister in the same apartment building as Jackson, but he now resided at a different location.

¶ 11    The trial court determined the State had met its burden of proving by clear and convincing evidence that the proof was evident and presumption great that defendant committed a qualifying offense and posed a real and present safety threat to Jackson, having punched her so hard he fractured her jaw and then encouraged her to lie about how she was injured. The court noted he did so while under a no-contact order and on probation for a previous domestic violence incident with this victim. The court further found there were no conditions to mitigate the real and present safety threat defendant posed to the victim based on "the serious nature of the pending charge, the escalation and violence to the same victim, the violations of no contact orders, and violations of probation."

¶ 12    B. Indictment and Subsequent Detention Proceedings

¶ 13    On July 26, 2024, a three-count bill of indictment was issued against defendant, charging him with aggravated domestic battery (720 ILCS 5/12-3.2(a)(1), (b) (West 2024)), a Class 2 felony, aggravated battery (*id.* § 12-3.05(c)), a Class 3 felony, and domestic battery (*id.* § 12-3.2(a)(2), (b)), a Class 4 felony.

¶ 14    On January 21, 2025, defendant filed a "Motion for Reconsideration of Pretrial Release Conditions." Defendant alleged he should be released from custody due to "significant

new information previously unavailable to the Court." He stated, *inter alia*, he had plans regarding where to reside and employment upon his release, he had filed an affirmative defense of self-defense, the victim had violated probation, and there are less restrictive conditions that could be imposed to mitigate any risk he posed.

¶ 15        A hearing was held on February 13, 2025, before Judge Jennifer J. Clifford. During this hearing, the trial court heard new information and evidence, including a proffer from defense counsel that defendant had strong ties to the community, could likely return to his employment, and planned to live with his wife of 10 years and their four children upon his release. Defense counsel also proffered defendant was the victim of an attack by Jackson in July 2024, when she cut him with a knife, causing deep lacerations to his arms. Jackson pleaded guilty to aggravated battery, and she was on probation, required to engage in substance abuse treatment due to alcohol use, and ordered to have no contact with defendant. Defense counsel referred to photographs of defendant's injuries he tendered at a prior court appearance, and the court acknowledged receipt of those photographs. Defendant proffered he was pursuing the affirmative defense of self-defense in this case. He further argued there were restrictions or conditions of release that would mitigate any threat he posed. In response, the State read into the record a letter written by Jackson, wherein she expressed regret for allowing defendant's abuse to go on for so long; stated she was hurt, ashamed, and had been living in a nightmare that she could not even talk to her family about; and explained she continued to have severe pain, problems with her teeth, and blurry vision as a result of the injuries she sustained.

¶ 16        Judge Clifford stated she reviewed the transcript of the original detention hearing and Judge Peterman's findings, the court files before it (referring specifically to Winnebago County case Nos. 22-DV-215, 24-CF-1726, and 24-CF-2809), Jackson's letter, the photographs of

defendant's prior injuries, and other exhibits. Judge Clifford indicated she wished to "note a few things for the record" and explained that in September 2023, she had presided over another case involving defendant, wherein he pleaded guilty to the domestic battery of Ashley Warren and was sentenced to 18 months' probation. She noted, by March 2024, the State had filed a petition to vacate defendant's probation based on his failure to report on several occasions and a positive alcohol test. Judge Clifford noted, during this time, defendant also pleaded guilty to domestic battery against Jackson while he was still on probation. Judge Clifford challenged defense counsel's assertion that defendant was not getting the same assistance while on probation as Jackson did in her case. Regardless, the judge explained she was not making a decision about Jackson and whether defendant had a self-defense claim was a decision for the trier of fact. The judge concluded there was nothing presented to address the concerns at the original hearing about any conditions of release being sufficient to mitigate the threat in this case. Thereafter, Judge Clifford engaged in a discussion with defendant in open court, wherein defendant explained some confusion with his attorney and probation officer that resulted in his failure to appear for probation. Defendant's motion was denied.

¶ 17    Defendant filed a notice of appeal challenging the trial court's original detention order. Thereafter, defendant filed a motion to dismiss his appeal, acknowledging his motion for reconsideration of the denial of his pretrial release was not in the form of a motion for relief, as required by Rule 604(h)(2). He also stated before he could appeal the February 2025 order, he must file a motion for relief in the trial court. This court granted defendant's unopposed motion to dismiss his appeal. *People v. Person*, No. 4-25-0367 (May 15, 2025) (order).

¶ 18                    C. Defendant's Motion for Relief

¶ 19    On August 8, 2025, defendant filed a *pro se* motion for relief in accordance with

- 7 -

Rule 604(h)(2), contending the State failed to "carry its burden on why less restrictive condition would not avoid a threat to the safety of any person(s) or the community." There is nothing in the record indicating a hearing was held regarding this motion. The record shows defendant's continued detention was deemed necessary on August 21 and 28, 2025. Defendant, represented by new counsel, filed another motion for relief on September 5, 2025, and an amended motion for relief on September 19, 2025. In his amended motion for relief, defendant contended his pretrial release should not have been denied because the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present safety threat he presented to any person or the community. The motion referred to the original detention order entered on July 12, 2024. However, in the motion, defendant stated:

> "There was in fact a second hearing held February 13, 2025, in which the State once again had the opportunity to present clear and convincing evidence on the conditions element, but again failed to meet its burden. Defense had filed a Motion for Reconsideration of Pretrial Release Conditions on January 21, 2025, which was denied by the court."

¶ 20        On October 23, 2025, Judge Clifford presided over the hearing on defendant's amended motion for relief. After hearing argument, the trial court took the matter under advisement and issued its decision on November 6, 2025. Judge Clifford stated she reviewed the evidence presented at the February 13, 2025, hearing and "adopt[ed] everything that was said at that [hearing] by the attorneys and by the Court, and by you, because [defendant], you, and I had a good conversation on that date, and make it part of the record in this case." The court reviewed the domestic violence case involving a different victim (Winnebago County case No. 22-DV-215) and explained it was "a pending case here before me as well, that was referenced in the original hearing

- 8 -

in front of Judge Peterman." Judge Clifford referred to defendant's VPRAI-R risk level in that other case being moderate-high, as defendant scored a 7 out of 14 on that assessment and a 14 out of 30 on the DVSI. The court considered defendant's alleged probation violations in other pending cases, as well as the factual basis for the current charges. The court noted, at the February 13, 2025, hearing, new information that was not presented at the original detention hearing was presented regarding the victim being charged with aggravated battery against defendant (referring specifically to case No. 23-CF-1984). Regarding that hearing, the court referred to the new information presented as

"specifically relating to the fact that [Jackson] was violating a no contact order when the contact was had between the two, between the two of you, and I do understand that, and do take that into account, but the fact of the matter is, as I said at that time, and I [say] now, the conditions that I'm dealing with are not conditions of Kandise Jackson, they're conditions for you."

The court then ruled as follows, "So I do not find, and cannot find, that Judge Peterman made an error, even with the new information that I have been provided, so at this time, I'm going to continue to deny your request to be released."

¶ 21        This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23                                A. Timeliness

¶ 24        We initially note that Rule 604(h)(8) (eff. Apr. 15, 2024) required the decision in this case to be filed within 100 days of filing the notice of appeal unless good cause for the delay is shown. We find good cause in this case because defendant's motions for an extension of time and to supplement the record caused a delay in the case being ready for decision.

¶ 25                    B. Pretrial Detention Proceedings and Defendant's Appeal

¶ 26            Under the Code, it is presumed that all criminal defendants are entitled to pretrial

release on personal recognizance, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2024).

The State may petition to overcome this presumption for a defendant charged with a detainable

offense as enumerated in the statute. *Id.* § 110-6.1(a). The Code provisions applicable in this case

required the State to prove by clear and convincing evidence (1) the defendant's release would

pose "a real and present threat to the safety of any person or persons or the community, based on

the specific articulable facts of the case," and (2) no condition or combination of conditions would

mitigate that safety threat. *Id.* §§ 110-6.1(e)(2), (3)(i). When a defendant is denied pretrial release

under the dangerousness provision of the Code, the trial court is obligated to find, at each of the

defendant's subsequent court appearances, his or her continued detention is necessary to avoid a

real and present threat to the safety of any person or persons or the community based on the specific

articulable facts of the case. *Id.* § 6.1(i-5). Defendants who have been denied pretrial release have

the right to appeal not only the original detention order but also any subsequent continued detention

orders issued by the trial court. *Id.* §§ 6.1(k).

¶ 27            An initial order of detention and a continued order of detention are fundamentally

different. As this court recently explained:

> "When issuing an order of detention, the trial court begins with the presumption a
>
> defendant should be granted pretrial release unless certain criteria are met and the
>
> State meets its burden of proving the necessity for pretrial detention. See [725
>
> ILCS] 5/110-2(a), (b), 110-6.1(a)(1), (8) [(West 2024)]. When issuing an order of
>
> continued detention, however, the detention decision has already been made and
>
> often already subjected to appellate review *** so the question relating to whether

the State proved each of the three propositions for pretrial detention by clear and convincing evidence during the initial hearing is not before the court. See *People v. Mulbrandon Casey*, 2024 IL App (3d) 230568, ¶ 13." *People v. Post*, 2025 IL App (4th) 250598, ¶ 25.

¶ 28 Although the Code requires trial judges to consider a detained defendant's continued detention at every court appearance (725 ILCS 5/110-6.1(i-5) (West 2024)), the Code does not specify any procedures a detained defendant must follow to *proactively* seek a change in his or her detention status by the trial court. See *People v. Harris*, 2024 IL App (2d) 240070, ¶ 37 ("[W]hether on motion of a party, on the court's own motion, or merely on subsequent appearance by a defendant in court, a trial judge must conduct some review of the appropriateness of a defendant's continued detention each time a defendant appears."); *People v. Fuller*, 2026 IL App (4th) 251329, ¶ 29 (finding a defendant is not required to file a motion to trigger review under section 110-6.1(i-5) of the Code)). As such, defendants have raised the issue on their own accord in the trial court by filing written motions with any number of title designations and noticing the motions for hearing. See, *e.g.*, *People v. Rhodes*, 2026 IL App (4th) 251088-U, ¶ 7 (noting the detained defendant filed a " 'Motion for Release from Pretrial Detention and/or Motion for Relief,' " arguing circumstances had changed since her original detention that warranted her release); *Post*, 2025 IL App (4th) 250598, ¶ 11 (noting the detained defendant filed a motion for review of his pretrial detention order pursuant to section 110-6.1(i-5) of the Code, arguing a change in circumstances had occurred to warrant his pretrial release); *People v. Cervantes*, 2024 IL App (4th) 240624-U, ¶ 21 (noting the detained defendant filed a " 'Motion to Reconsider Pre-trial Release,' " claiming there were conditions that could assure his appearance in court and alleviate any safety risk he posed); *People v. Phelps*, 2025 IL App (1st) 251777-U, ¶ 10 (noting the detained

defendant filed a "Motion to Vacate Detention Order and Release Defendant From Pretrial Detention pursuant to section 110-6.1(i-5) of the Code," arguing new evidence supported his pretrial release). Defendants have also raised the issue more informally, in the general course of the proceedings, by bringing matters to the attention of the trial court at a subsequent court appearance. See, *e.g.*, *Harris*, 2024 IL App (2d) 240070, ¶ 11 (noting the defendant's attorney informed the trial judge, in open court, he intended to retrieve new evidence from the detained defendant's possessions held at the jail to present as new evidence and seek review of the defendant's pretrial detention); *People v. Long*, 2023 IL App (5th) 230881, ¶ 9 (noting defense counsel made an oral motion for the defendant's pretrial release at a subsequent pretrial hearing); *People v. Rice*, 2025 IL App (3d) 250262, ¶¶ 7, 12 (noting defense counsel presented new information at a subsequent hearing establishing the defendant could comply with conditions of pretrial release and finding no statutory requirement that a defendant file a motion for relief or any other motion to revisit the detention decision because the statute requires the court to do so at each subsequent appearance by the defendant in court).

¶ 29        Although a pretrial detention decision is subject to continuous review in the trial court and a defendant may instigate a challenge to his or her pretrial detention in numerous ways and at any time, the path to appellate review of any detention decision is clear. Rule 604(h)(2) provides, as a "prerequisite" to appealing any detention decision, a defendant must file a written motion for relief in the trial court "requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). After the disposition of a motion for relief in the trial court, the defendant may initiate an appeal by filing a notice of appeal "at any time prior to conviction." Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024). The purpose of a hearing on a motion for relief is to "frame issues on appeal more efficiently, give trial courts the

opportunity to correct errors, and streamline the appeals process." *People v. Williams*, 2024 IL App (1st) 241013, ¶ 28. In fact, the rule specifies that "[t]he motion for relief will serve as the argument of the appellant on appeal." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Although the appellant may file a supplemental memorandum in the appellate court, "any issue not raised in the motion for relief *** shall be deemed waived" for appellate purposes. *Id.* § (h)(2).

¶ 30        It is within this context that we consider the somewhat unusual proceedings that took place in this case.

¶ 31        On July 12, 2024, defendant was detained after a hearing on the State's verified petition to deny defendant pretrial release. Thereafter, on January 21, 2025, defendant filed a "Motion for Reconsideration of Pretrial Release Conditions." Defendant did not reference section 110-6.1(i-5) of the Code, but he did allege he should be released from custody due to "significant new information previously unavailable to the Court." On February 13, 2025, the trial court held a hearing on defendant's motion and considered new evidence, proffers, and argument from both sides. The court determined defendant should remain detained. Defendant appealed this decision but voluntarily dismissed that appeal, recognizing he had not taken the required jurisdictional step in the trial court of filing a motion for relief. Thereafter, defendant filed an amended motion for relief, and a hearing was held on October 23, 2025. The trial court denied defendant's motion for relief, and he appealed.

¶ 32        The issues in this appeal are limited to those raised in the motion for relief. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In his motion, defendant challenges his original detention order as well as the subsequent decision to continue his detention on February 12, 2025, arguing the State did not establish he presented an unmitigable threat to Jackson and there were less restrictive conditions that could mitigate any threat he posed. Consistent with this court's recent

- 13 -

decision in *Fuller*, we view defendant's detention as the cumulative result of the evidence heard or information learned at *both* hearings. *Fuller*, 2026 IL App (4th) 251329, ¶ 36 (holding the court should "examine the basis for [the] defendant's continued detention based on the record developed at any detention hearing, be it the original hearing or a subsequent review"). This court previously determined "review of the necessity for continued detention *** cannot, as a practical matter, be undertaken without reference to the reasons for the original detention decisions." *People v. Walton*, 2024 IL App (4th) 240541, ¶ 37. We conclude the opposite is also true. As such, we cannot review defendant's original pretrial detention in isolation, as the new evidence or information presented at the subsequent detention hearing in the trial court bears on the current state of defendant's pretrial detention.

¶ 33                    C. The Trial Court's Detention Decision

¶ 34          On appeal, defendant argues the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present safety threat defendant presented to any person or the community at both the original detention hearing and the February 2025 hearing.

¶ 35          A finding of dangerousness alone does not automatically warrant pretrial detention. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18 (finding pretrial detention requires more than a detainable offense and a threat to public safety). "Instead, the trial court must determine, based on the specific facts of the case and the defendant's individual background and characteristics, whether any combination of conditions can mitigate the threat and allow the defendant's release." *Id.* "In each case, a court must conduct an 'individualized' assessment of the propriety of detaining the defendant versus releasing him or her with conditions." *Id.* ¶ 15. Furthermore, at a subsequent detention hearing, the Code requires the trial court to determine

whether continued detention is "necessary to avoid a real and present threat to the safety of any person or person or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(i-5) (West 2024). This court has determined the appropriate standard for reviewing a trial court's continued detention order is the abuse-of-discretion standard. *People v. Post*, 2025 IL App (4th) 250598, ¶ 29, *pet. for leave to appeal allowed*, No. 132403 (Nov. 21, 2025). "An abuse of discretion occurs when the trial court's 'decision is arbitrary, fanciful or unreasonable, or where no reasonable person would agree with the position adopted by the [trial] court.' " *Id.* (quoting *Walton*, 2024 IL App (4th) 24051, ¶ 33).

¶ 36　　　　The nature and circumstances of the charged offenses are alarming. Defendant, who had been in a three-year relationship with Jackson, battered her about the head and face to the point of unconsciousness and fractured her jaw. Defendant then made efforts to avoid responsibility for his conduct by using a mop to clean up the blood left behind on the stoop and stairwell where the incident occurred and telling Jackson to lie to hospital staff and say she was injured in a four-wheeler accident. Jackson did not report the incident until days later, when defendant was, once again, at her home.

¶ 37　　　　Defendant has an extensive criminal history, including other incidents of domestic violence. Jackson reported defendant had been violent with her as many as 10 times during their relationship, and the violence had escalated each time. Defendant pleaded guilty to a prior domestic battery charge involving Jackson that occurred in January 2024, just months before this incident, wherein Jackson reported defendant had dragged her out of a friend's apartment and punched her three times in the mouth. Defendant was ordered to have no further contact with Jackson, yet he disregarded the order and continued to be in contact with her. The State proffered another ex-girlfriend of defendant reported he slapped her twice with an open hand in June 2022. The PSI

revealed defendant had "prior criminal convictions for assaultive/violent, obstruction, property, resisting and weapons related offenses." The PSI also confirmed defendant was on probation and had a no-contact order with the victim at the time of this incident, two or more failures to appear, and a history of drug abuse. Defendant was at a high risk for recidivism based on his scores on the VPRAI-R and DVSI.

¶ 38    Defendant argued in his motion that " 'dangerousness' " and " 'conditions' " were conflated in this case and the trial court "did not separately consider why the no contact condition suggested by the defense, in addition to standard release conditions, would be insufficient." We cannot agree. The record reveals a no-contact order had been proven to be an insufficient means of protecting Jackson from the threat posed by defendant in this case. Defendant repeatedly ignored the court's order to have no contact with Jackson. Defendant's violent behavior with Jackson has been shown to have escalated to the point of severely injuring her by breaking her jaw. It can also be inferred from the record that defendant has either intimidated or exerted influence over Jackson. When Jackson called the police regarding the January 2024 incident, defendant answered her door and initially refused to allow officers into her apartment. After the July 2024 incident, when defendant eventually took Jackson to the hospital due to the severity of her injuries, he told her to lie about how she received the injuries. Jackson told the police she did not call them right away "because she was in so much pain and could not talk and [defendant] was with her most of the time."

¶ 39    Furthermore, none of the new information proffered at the February 2025 hearing warranted defendant's pretrial release. Defendant, who previously stated he was living with his sister one floor below the victim in her apartment building, proffered, upon release, he planned to live elsewhere with his wife of 10 years and four children. This reported change in proximity to

the victim failed to establish defendant would now be willing to abide by a no-contact order and actually stay away from this victim. Likewise, the fact that the victim previously pleaded guilty to aggravated battery as a result of one of their altercations, was on probation, and was under a no-contact order only further established the volatility of their relationship. Defendant proffered he planned to pursue a self-defense claim but did not present any explanation as to how that information now mitigated the threat he posed to Jackson. The trial court concluded, and we agree, there was nothing proffered at the February 2025 hearing to address the concerns at the original hearing that no conditions of release would be sufficient to mitigate the threat in this case.

¶ 40　　　　Based on the specific articulable facts in this case, we find no error in the trial court's conclusion there was no condition or combination of conditions to mitigate the safety threat defendant posed to Jackson; thus, defendant's continued detention was necessary. Although we have determined the proper standard of review of a continued detention determination is abuse of discretion and the trial court's decision was not an abuse of discretion in this case, we further find the result would be the same under any other standard of review as well. Therefore, we affirm.

¶ 41　　　　　　　　　　　　III. CONCLUSION

¶ 42　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 43　　　　Affirmed.

¶ 44　　　　JUSTICE LANNERD, specially concurring:

¶ 45　　　　I write separately to emphasize the importance of viewing initial and continued detention orders as an ongoing, seamless, and cumulative process of evaluation and review. I find *Fuller*, 2026 IL App (4th) 251329, ¶ 39, instructive and agree we should construe each detention order as "building on the ones that came before it."

¶ 46        Section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2024)) addresses both initial and continued detention hearings, which suggests an ongoing process. With respect to initial detention hearings, section 110-6.1(h)(1) requires the trial court to

> "make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(h)(1).

¶ 47        These written findings provide necessary information that the trial court may review at any continued detention hearings. This is particularly useful because, pursuant to section 110-6.1(i-5),

> "At each subsequent appearance of the defendant before the court, the judge must find that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5).

¶ 48        Following a trial court's detention decision, a party may file a motion for relief. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). A hearing on the motion for relief is the trial court's last opportunity before appeal to determine whether pretrial detention or release is appropriate. This decision is made based on all the information available to the court, including evidence presented at prior hearings. As the issue is not raised in this case, like the court in *Fuller*, 2026 IL App (4th) 251329, ¶ 37, I find it unnecessary to address whether the trial court may hear new evidence at a hearing on a motion for relief. The court in *Fuller* stated,

"The relevant issue in *Williams* was whether additional evidence could be received at the motion for relief hearing, a question not presented here and on which we make no comment. However, we do not believe that *Williams* stands for the proposition that the motion for relief hearing should be limited to consideration of only the evidence received at the *initial* detention hearing to the exclusion of new evidence received at subsequent detention review hearings. Such an approach would insulate interim detention rulings from review." (Emphasis in original.) *Id.*

¶ 49 The importance of a cumulative review of the initial and continued detention orders cannot be overstated. By way of example, assume that at the initial detention hearing, the State proffered the defendant had a prior conviction for a particular offense, which the defendant claimed was inaccurate. Thereafter, at a continued detention hearing, the State conceded the conviction was against another individual with the same name as the defendant. Or perhaps at the initial detention hearing, the same defendant argued the State failed to present sufficient evidence connecting him to the crime. However, at a continued detention hearing, the State now had DNA results connecting the defendant to the scene of the crime. (I note, for the purposes of the prior examples, similar to this case, I presumed the parties did not challenge the consideration of new information or evidence at the continued detention hearing.) This information was all relevant and should be considered by the trial court at the motion for relief hearing, even if the defendant only challenged the court's determination at one of the two hearings. To allow each hearing to be reviewed in a vacuum would deny the trial court the opportunity to review all the information necessary to apply the statutory factors outlined in section 110-6.1 and make the most informed decision when it rules upon the motion for relief.

¶ 50 Given the order on the motion for relief is the trial court's final determination after a cumulative review, it would follow that this court should consider Rule 604(h) appeals as an appeal from the order on the motion for relief. (Assuming *arguendo* Rule 604(h) permits or could be amended to allow such an approach.) As stated in *Fuller*, "The motion for relief is a prerequisite to appeal from *any* of the various detention orders in a case, so evidence received at any and all of them is appropriate to be considered when deciding the motion for relief and, consequently, appellate review." (Emphasis in original.) *Id.* Moreover, as the majority noted, "The purpose of a hearing on a motion for relief is to 'frame issues on appeal more efficiently, give trial courts the opportunity to correct errors, and streamline the appeals process.' " *Supra* ¶ 29 (quoting *Williams* 2024 IL App (1st) 241013, ¶ 28). Our review of the motion for relief should then have the benefit of the entire record, which contains the initial detention hearing as well as additional information developed throughout any continued detention hearings.

¶ 51 The language utilized by our supreme court in Rule 604(h)(1) supports this contention. Pursuant to Rule 604(h)(1), detention orders should be construed as "interlocutory order[s] of [the] court entered under sections 110-5, 110-6, and 110-6.1 of the [Code]." *Id.* With respect to interlocutory orders, our supreme court has long held "interlocutory order(s) may be modified or vacated at any time before final judgment." (Internal quotation marks omitted.) *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 121(1978). Thus, consistent with this notion, it would be imperative for an appellate court to consider the entire record when reviewing an interlocutory order. Since initial and continued detention orders are, by virtue, interlocutory orders, their review should be no different.